UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
CHARLOTTE YANTHA,                                                    :        13-CV-1948 (ARR)(JMA)
                                                                     :
                              Plaintiff,                             :        <u>OPINION AND ORDER</u>
                                                                     :
        -against-                                                   :
                                                                     :
OMNI CHILDHOOD CENTER, INC., KTG                                     :
OCCUPATIONAL THERAPY, P.C., JOHN DOE                                 :
COMPANIES 1-100, and FEIGI HALBERSTAM,                              :
                                                                     :
                              Defendants.                            :
                                                                     :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

        Plaintiff, Charlotte Yantha ("plaintiff"), worked as an occupational therapist at

defendants' Midwood, Brooklyn, facility. Unbeknownst to plaintiff, during her tenure,

defendants submitted numerous insurance claims in her name for occupational therapy services

she did not perform. Plaintiff learned of the fraudulent submissions in 2012 when she received a

letter from an insurance company informing her that her claims for reimbursement were subject

to an audit. Plaintiff confronted defendants, who, in retaliation for refusing to go along with the

scheme, docked her pay. Plaintiff ultimately left defendants' employ and brought suit, alleging

violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and various

state-law torts. The non-John Doe defendants (hereinafter "defendants") move to dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons,

the motion is granted in part and denied in part.

**BACKGROUND**

Defendants hired plaintiff in 1998.  Am. Compl. ¶ 19.  Plaintiff worked for defendants both as an occupational therapist and as a manager of their Midwood, Brooklyn, facility.  Id.  At the same time, plaintiff worked independently as an occupational therapist and provided services through other occupational therapy practices.  Id. ¶ 20.  Defendants frequently sought reimbursement from health insurers for work performed by plaintiff.  Id. ¶¶ 23-24.  When defendants would seek such reimbursement, they would identify plaintiff as the "plan-certified occupational therapist who provided . . . services to [the patient]."  Id. ¶ 23.  According to plaintiff, defendants filed claims with health insurers by accessing electronic accounts that "belong[ed] to" plaintiff.  Id. ¶¶ 25-26.

In April 2012, plaintiff received a letter from a health insurer notifying her that an audit was being conducted into certain claims filed by defendants for services purportedly performed by plaintiff.  Id. ¶ 21.  The letter informed plaintiff that defendants had responded to the audit, but that their response was insufficient.  Id.  The letter also warned that plaintiff's certification would be terminated if defendants did not make a full response.  Id.  The insurer attached a list of the claims being audited; these included patients that plaintiff had not treated and work performed at defendants' Williamsburg, Brooklyn, facility, where plaintiff did not work.  Id.

Plaintiff then began to investigate claims submitted in her name.  In order to do so, she gained access to the electronic accounts defendants used to file claims for reimbursement with two insurers.  Id. ¶ 25.  Through these accounts, plaintiff learned that defendants had submitted "at least hundreds or thousands of fraudulent claims" in her name.  Id. ¶ 27.  Plaintiff knew that many of the claims submitted under her name were for work she did not perform based on the

location of the services provided (i.e. the Williamsburg facility), the types of services provided, and the patients treated.  Id.  Defendants also frequently sought reimbursement for treatment of conditions that, according to plaintiff, are extremely rare.  Id. ¶ 31.  Plaintiff therefore came to believe that not only were defendants using her name to obtain reimbursement for services performed by others, but that defendants were fraudulently obtaining reimbursement for services that were never performed at all.  Id.

Shortly after plaintiff obtained access to her electronic accounts with insurers, "her passwords to those accounts were changed."  Id. ¶ 32.  Plaintiff believes defendants "had her passwords changed so that she could no longer access the accounts."  Id.  Although plaintiff had to provide personal identifying information in order to access the electronic accounts, she states that the "insurers confirmed that these accounts belong to [plaintiff] as opposed to [defendants]."  Id. ¶ 25.

After learning about defendants' misuse of her name in reimbursement claims, plaintiff confronted defendants.  Id. ¶¶ 33-35.  The director of defendants' Williamsburg facility expressed "outrage[]" that plaintiff objected to defendants' practice, and told her that if she did not permit them to use her name in this manner, she was "not fulfilling [her] role as a supervisor."  Id. ¶ 35 (second alteration in original).  The director threatened that plaintiff's job would "be in jeopardy if she did not go along with the fraud."  Id.  Subsequently, defendants reduced plaintiff's salary from $140,000 to $106,000 and cut her vacation time.  Id. ¶ 37.  Defendants also continued to use plaintiff's name for fraudulent reimbursements, "[o]ver [plaintiff's] objections."  Id. ¶ 40.  Despite these facts (and for reasons not explained in either of the complaints), plaintiff remained an employee of defendants for eight months, finally leaving

on January 6, 2013.  Id. ¶ 42.  Plaintiff believes defendants continued to use her name to submit additional fraudulent insurance claims after she left.  Id. ¶ 43.

Plaintiff filed suit in this court on April 5, 2013, alleging violations of ERISA, the Lanham Act, 15 U.S.C. § 1125, and a variety of New York torts.  See Dkt. #1.  Following a pre-motion conference on an anticipated motion to dismiss, see Dkt. #10, plaintiff agreed to submit a "last and best" complaint, and subsequently filed an amended complaint.  The amended complaint, Dkt. #11, withdrew several of plaintiff's causes of action, including her Lanham Act claim, and added claims for defamation, breach of bailment, and a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), the last of which was subsequently withdrawn, see Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n") 19 n.4.  Defendants moved to dismiss all of plaintiff's claims with the exception of her ERISA claim.  See generally Mem. of Law in Supp. of Non-Doe Defs.' Partial Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) ("Mot. to Dismiss").

## DISCUSSION

I.    *Standard of Review*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bringing the action bears the "burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." Id. (citation omitted); accord Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1148 (2013) .  In ruling on a motion to dismiss, the court must accept as true all material factual allegations in the plaintiff's complaint but need not draw inferences favorable to the party asserting jurisdiction.

4

Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."); see also J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).

Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 476 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

II.    *Plaintiff's Claims*

    a.    Defamation

Plaintiff's first cause of action alleges that, in using her name without her consent, defendants falsely held themselves out as plaintiff and made false claims about what occupational therapy services plaintiff performed. Am. Compl. ¶ 59. As a result, plaintiff was made to appear "as a fraud, a deceiver, and a person with no integrity." Id. ¶ 61. Plaintiff

alleges that defendants' actions have harmed her professional reputation, as her name is now associated with an insurance fraud scheme.  Id. ¶¶ 64-66.  Defendants argue that plaintiff has not established standing to bring this claim because, they argue, "she has not alleged a concrete and actual (or even imminent) injury resulting from the reference to her name."  Mot. to Dismiss 3. Alternatively, they argue, plaintiff has not sufficiently pleaded a plausible cause of action for defamation.  Id. at 7.

First, in order to establish Article III standing, "a plaintiff must satisfy three elements: (a) the plaintiff must suffer an 'injury in fact,' (b) that injury must be 'fairly traceable' to the challenged action, and (c) the injury must be likely to be 'redressed by a favorable decision' of the federal court."  Natural Res. Def. Council v. U.S. Food & Drug Admin., 710 F.3d 71, 79 (2d Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  An "injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (internal citations and quotation marks omitted).  Defendants argue that plaintiff has failed to allege an injury in fact because she does not allege that she lost employment, "incurred actual monetary damages," or "otherwise actually suffered material adverse consequences from the presence of her name on the [reimbursement] forms."  Mot. to Dismiss 4.

Contrary to defendants' argument, "[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing."  Gully v. Nat'l Credit Union Admin. Bd., 341 F.3d 155, 161-62 (2d Cir. 2003) (collecting cases); accord Ass'n of Cmty. Orgs. for Reform Now v. United States, 692 F. Supp. 2d 260, 278 (E.D.N.Y. 2010), vacated on other grounds sub nom. ACORN v. United States, 618 F.3d 125 (2d Cir. 2010) ("[E]ven where

there is no direct economic injury, reputational injury, as the government acknowledges, can be an injury-in-fact for standing purposes.").  Here, plaintiff has plainly asserted an actual injury to her reputation insofar as defendants' actions could plausibly lead insurers to believe that plaintiff was the one submitting false claims for reimbursement and one insurer already threatened to revoke plaintiff's certification based on its audit of claims submitted in her name.  See Am. Compl. ¶ 21. Defendants do not contest that plaintiff's reputational injury is fairly traceable to their alleged misconduct, and the amended complaint clearly alleges a causal connection between defendants' actions and plaintiff's injury.  Moreover, as plaintiff seeks a declaratory judgment making clear which services were, in fact, performed by her, as well as compensatory damages, the harm may be redressed by a favorable decision of this court.  See Milkovich v. Lorain Journal Co., 497 U.S. 1, 12 (1990) ("Defamation law developed not only as a means of allowing an individual to vindicate his good name, but also for the purpose of obtaining redress for harm caused by such statements.").  Accordingly, the amended complaint establishes plaintiff's standing to bring a claim of defamation.

Second, accepting all the well-pleaded allegations as true, the amended complaint plausibly states a claim for defamation.  The elements of defamation are: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused special damages."  Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (alteration in original) (internal quotation marks omitted).  Defendants argue that plaintiff cannot make out a defamation claim, since "those actions and statements which plaintiff alleges were defamatory[] are far from a direct (or even indirect) attack on

plaintiff's reputation."  Mot. to Dismiss 7.  In addition, defendants argue that "there are no factual allegations that plaintiff even suffered, or will suffer, professional reputational harm from the presence of her name on these forms."  Id.  These arguments miss the thrust of plaintiff's complaint.  Plaintiff's claim – that defendants' use of her name in fraudulent claims made her out to be a fraudster, causing injury to plaintiff's trade or profession – is well-recognized under New York law.

New York courts have long held that "an act of . . . impersonation [that] imputes facts to the person impersonated that damage him in his trade or profession" supports a claim for defamation.  Rall v. Hellman, 726 N.Y.S.2d 629, 631 (App. Div. 2001) (citing Ben-Oliel v. Press Publ'g Co., 167 N.E. 432 (N.Y. 1929)).  In Ben-Oliel, plaintiff was a teacher and lecturer on life and social customs under Mosaic law.  167 N.E. at 433.  Defendant, a newspaper corporation, published an article in plaintiff's name, stating facts about plaintiff's field of study that were "absolutely false and untrue."  Id.  The New York Court of Appeals held, "The statement of these facts as coming from a skilled traveler and observer makes her out [to be] ridiculous, a fraud, a deceiver, and a charlatan."  Id.  The Court of Appeals further explained, "In order to constitute a libel, it is not necessary for the defendant in its paper to directly attack the plaintiff as an ignorant imposter.  The same result is accomplished by putting in her mouth or attaching to her pen words which make self-revelation of such a fact."  Id. at 433-34.  Similarly here, defendants' filing of false insurance claims in plaintiff's name made it appear that plaintiff herself was engaged in a fraudulent scheme.  Accordingly, plaintiff has adequately pleaded that defendants' conduct amounted to making a false statement about her.

8

As to publication to a third party, plaintiff has alleged that defendants' false claims were transmitted to insurers via the electronic accounts, and plaintiff did not consent to such transmissions. Am. Compl. ¶ 59. These allegations sufficiently make out the publication element of a defamation claim.

Finally, with respect to damages, the facts alleged in the amended complaint reasonably support plaintiff's claim that her association with defendants' fraud has harmed her "professional reputation and her standing in the medical community." Id. ¶ 65. As mentioned above, defendants' conduct has already invited scrutiny of plaintiff by at least one insurer. See id. ¶ 21. Moreover, plaintiff need not plead special damages, as a statement which tends "to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179 (2d Cir. 2000) (internal quotation marks omitted).[1] Plaintiff's allegations that defendants knowingly and intentionally submitted false reimbursement claims in plaintiff's name to third-party insurers and that these claims damaged plaintiff's profession or trade are sufficient to state a claim of defamation per se. See Nicholls v. Brookdale Univ. Hosp. Med. Ctr., No. 03-CV-6233(JBW), 2004 WL 1533831, at *11 (E.D.N.Y. July 9, 2004) (statements that plaintiff, a medical assistant, "forged doctor[]s['] signatures, engaged in fraud, and falsified medical records" affected plaintiff's ability to carry on her trade or occupation, and thus constituted slander per se)

---

[1]A statement may also be libelous per se if it charges plaintiff with a serious crime. See Liberman v. Gelstein, 605 N.E.2d 344, 347 (N.Y. 1990). Plaintiff does not specifically allege that defendants' false insurance claims violated federal or state criminal laws, though the court notes that some types of false insurance claims are criminal, see, e.g., 42 U.S.C. § 1320a-7b; N.Y. Penal L. § 177.05.

(internal quotation marks omitted).  Plaintiff has therefore adequately pleaded all of the elements of a cognizable defamation claim under New York law.

Accordingly, defendants' motion to dismiss plaintiff's first cause of action pursuant to Rules 12(b)(1) and 12(b)(6) is denied.

### b.    Unfair Competition

Plaintiff next argues that defendants' conduct amounted to "unfair competition" under New York law.  "The essence of an unfair competition claim is that the defendant assembled a product which bears so striking a resemblance to the plaintiff's product that the public will be confused as to the identity of the product."  Shaw v. Time-Life Records, 341 N.E.2d 817, 820 (N.Y. 1975).  New York recognizes two theories of common-law unfair competition: palming off and misappropriation.  See ITC Ltd. v. Punchgini, Inc., 880 N.E.2d 852, 858 (N.Y. 2007).  "'Palming off'—that is, the sale of the goods of one manufacturer as those of another—was the first theory of unfair competition endorsed by New York courts, and 'has been extended . . . to situations where the parties are not even in competition.'"  Id. (quoting Electrolux Corp. v. Val-Worth, Inc., 161 N.E.2d 197, 203 (N.Y. 1959)).  Plaintiff characterizes her claim as "a straightforward case of 'palming off,'" though she appears also to argue a misappropriation theory, asserting that defendants used her name after she "invested substantial resources in becoming trained, licensed, and certified as an occupational therapist."  Opp'n 9-10.  She alleges that this use of her name confused insurers, who, in addition to her patients, were plaintiff's customers.  Id.[2]  Although the facts averred in the amended complaint support plaintiff's

---

[2]Plaintiff also argues that the patients were confused, but this argument makes little sense, as plaintiff's patients obviously knew who was actually providing them occupational therapy services.

standing to bring an unfair competition claim, plaintiff fails to state a claim for unfair competition because she does not allege a commercial or competitive injury cognizable under New York law.

First, with respect to plaintiff's standing, "standing to assert a cause of action for unfair competition under New York law requires pleading of facts 'supporting a colorable property or pecuniary interest.'" Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 168 (S.D.N.Y. 1998) (quoting Berni v. Int'l Gourmet Rests. of Am., 838 F.2d 642, 648 (2d Cir. 1988)). "New York courts have found that persons have a protectable property interest in their "'labor, skill, expenditure, name and reputation.'" LinkCo, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 502 (S.D.N.Y. 2002) (emphasis added) (quoting Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp., 101 N.Y.S.2d 483, 492 (Sup. Ct. 1950)). Further, unlike the Lanham Act, New York unfair competition law, as interpreted by the Second Circuit, protects the use of personal names that have not acquired secondary meaning under certain circumstances. See 815 Tonawanda St. Corp. v. Fay's Drug Co., 842 F.2d 643, 649 (2d Cir. 1988); see also J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 15:12 (4th ed. 2013) (noting, however, that so-called "New York Rule" "enjoys more popularity in the New York federal courts than in the state courts of New York"). Such circumstances include "'instances of actual palming off and deception.'" 815 Tonawanda St. Corp., 842 F.2d at 649 (quoting Polo Fashions, Inc. v. Extra Special Prods., Inc., 451 F. Supp. 555, 563 (S.D.N.Y. 1978)); accord Lincoln Rest. Corp. v. Wolfies Rest. Inc., 291 F.2d 302, 303 (2d Cir. 1961) (even if secondary meaning not established, "intent to trade on plaintiffs' reputation and plaintiffs' name was specifically found, and we see no distinction between this and ordinary 'palming off'"). Here, although there is no

allegation that plaintiff's personal name has acquired any secondary meaning, plaintiff alleges that defendants used her name (and the labor she expended in obtaining her certification) for their own gain, and that at least one insurer was actually deceived or confused by defendants' actions. Accordingly, plaintiff's allegations are sufficient to establish standing to bring a claim of unfair competition under New York law.

The complaint is deficient, however, in stating a competitive injury as a result of any unfair competition by defendants. Although the law of unfair competition has been broadly construed to provide protection "from any form of commercial immorality," Metro. Opera Ass'n, 101 N.Y.S.2d at 492, "[t]he tort is not all-encompassing," Coca-Cola N. Am. v. Crawley Juice, Inc., Nos. 09 CV 3259(JG)(RML), 09 CV 3260(KAM)(RML), 09 CV 3279(ERK)(RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (alteration in original) (internal quotation marks omitted). "Not every act, even if taken in bad faith, constitutes unfair competition." CA, Inc. v. Simple.com, Inc., 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009). Instead, to state a claim for unfair competition, a plaintiff must allege either a "direct financial loss, lost dealings, or . . . [lost] profits resulting from the anticompetitive acts at issue," Coca–Cola N. Am., 2011 WL 1882845, at *6 (internal quotation marks omitted), or, at the very least, "that defendant diverted plaintiff's customers and business [to defendant]," Barbagallo v. Marcum LLP, 820 F. Supp. 2d 429, 447 (E.D.N.Y. 2011).

Plaintiff here has alleged neither. For obvious reasons, plaintiff is not alleging that she was actually entitled to the proceeds of the fraudulent reimbursement claims. She therefore cannot claim that she lost profits to which she was entitled, or that defendants diverted her business, or that defendants otherwise deprived her of proceeds she would have been able to reap

but for defendants' unfair competition. Consequently, plaintiff cannot allege a direct competitive injury. Plaintiff instead argues she suffered a more oblique commercial injury, stating that defendants' unfair competition injured her "name and reputation" and "caused [her] to earn less compensation than she would have earned had [defendants] not misappropriated her name and certification." Am. Compl. ¶ 90. The first of these allegations – the reputational injury – fails because New York courts have recognized that unfair competition can create a reputational harm only "when inferior work has been palmed off as the product of another whose goods are favorably received by the consuming public." Shaw, 341 N.E.2d at 821; accord Electrolux Corp., 161 N.E.2d at 205. Plaintiff has made no such claim here.[3] The second injury plaintiff asserts – her loss in compensation – is not tied to defendants' alleged unfair competition, but rather to retaliation for plaintiff confronting defendants about the false insurance claims. Plaintiff thus has not asserted a competitive injury.

In the absence of a claim of competitive injury, such as defendants obtaining business that should rightfully be plaintiff's or in any other way usurping her commercial advantage, plaintiff argues that the tort of unfair competition is limited only by the "'conscience, equity, and justice of common-law judges.'" Opp'n 9 (quoting LinkCo, 230 F. Supp. 2d at 501). This appeal to the court's equitable powers is unavailing. Even the New York cases that speak of unfair competition in the broadest terms ground their decisions in a clear competitive injury. See Dior v. Milton, 155 N.Y.S.2d 443, 450 (Sup. Ct. 1956) (defendants' marketing of inferior designs resembling plaintiff's designs "tends to diminish public interest in the original designs

---

[3]Moreover, any reputational injury plaintiff claims to have suffered as a result of unfair competition is wholly duplicative of the injury arising from her defamation claim.

13

and models of plaintiffs"); <u>Metro. Opera Ass'n</u>, 101 N.Y.S.2d at 499 (defendants' marketing of inferior recordings of Metropolitan Opera made plaintiff "likely to lose the major part of its royalties from the sale of the authorized records"); <u>see also</u> <u>Ruder & Finn Inc. v. Seaboard Sur. Co.</u>, 422 N.E.2d 518, 522 (N.Y. 1981) ("Even the case on which the [defendant] relies for its broad-ranging definition of unfair competition accepts the principle of misappropriation of another's commercial advantage as a cornerstone of the tort.") (citing <u>Dior</u>, 155 N.Y.S.2d at 455). Although the tort of unfair competition "is adaptable and capacious," <u>Roy Export Co. Establishment v. CBS</u>, 672 F.2d 1095, 1105 (2d Cir. 1982), the Second Circuit has cautioned that "such an amorphous cause of action is capable of mischievous application." <u>Id.</u> Given that plaintiff has failed to assert any competitive injury arising from defendants' alleged unfair competition, the court declines the invitation to expand the reach of state law and apply the tort here. <u>See</u> <u>H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.</u>, 879 F.2d 1005, 1025 (2d Cir. 1989) (rejecting "novel and interesting" unfair competition counterclaim because "it is not the role of a federal court . . . to undertake such an expansion of New York law").

Defendants' motion to dismiss plaintiff's claim of unfair competition is therefore granted.

<u>c.</u>    Right to Publicity

Plaintiff next alleges that defendants violated her right to publicity based on New York Civil Rights Law §§ 50-51. Am. Compl. ¶¶ 93-102. This claim is a non-starter because the statute was plainly not intended to address the type of misconduct of which plaintiff complains. The right to publicity recognized in New York protects the proprietary use of one's name or image, such as an entertainer's right to get the commercial benefit of the publication of his image, and prevents the unauthorized use of a person's name or image to give the impression

14

that the person endorses the defendant's business or product.  See Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1197-98 (9th Cir. 1989).  Although defendants here used plaintiff's name to reap ill-gotten gains, plaintiff's allegations do not state a claim for a violation of her right to publicity.

The right to publicity in New York derives from §§ 50-51 of the Civil Rights Law.  See Marshall v. Marshall, No. 08 CV 1420(LB), 2012 WL 1079550, at *20 (E.D.N.Y. Mar. 30, 2012) ("New York does not recognize any right to publicity other than that created by Section 51.").  The statute provides a civil action against any "person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person."  N.Y. Civ. Rights L. § 50.[4]  It applies to "cases where the plaintiff generally seeks publicity, or uses his name, portrait, or picture, for commercial purposes but has not given written consent for a particular use."  Stephano v. News Grp. Publ'ns, Inc., 474 N.E.2d 580, 584 (N.Y. 1984).  Plaintiff does not allege that she generally seeks publicity.  She does allege that she uses her name for commercial purposes "in connection with [her] provision of [occupational therapy]."  Am. Compl. ¶¶ 93, 96. This use, though "commercial" in a broad sense, is not the type of "proprietary interest in [a] name" that the statute was meant to protect.  See Delan by Delan v. CBS, Inc., 458 N.Y.S.2d 608, 615 (App. Div. 1983) (reversing grant of summary judgment for plaintiff on right to publicity claim where plaintiff did not demonstrate "that he is in any fashion a public personality" with an "interest in his personality . . . closely analogous to the goals of patent and copyright law focusing on the right of the individual to reap the reward of his endeavors and

---

[4]Section 51 incorporates the language of § 50.

having little to do with protecting feelings or reputation") (internal quotation marks omitted).

Plaintiff's argument that the use of her name on insurance claim forms amounted to a "commercial use" under the statute would expand the right to publicity to any instance in which someone uses his name in a professional context; in other words, beyond the application recognized by New York courts.

Even assuming, however, that plaintiff's use of her name fell within the ambit of the statute, her right to publicity claim still fails because she has not adequately alleged that defendants' unauthorized use of her name was for advertising purposes or purposes of trade. "To be a use for advertising purposes, the use must appear in or as part of an advertisement or solicitation for patronage." Lerman v. Flynt Distrib. Co., Inc., 745 F.2d 123, 130 (2d Cir. 1984) (internal quotation marks omitted). "Trade purposes is defined as use which would draw trade to the [defendant's] firm." Sch. of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804, 812 (Sup. Ct. 2003) (alteration in original) (internal quotation marks omitted). The use for advertising purposes plainly does not apply here. Plaintiff argues that defendants used her name for trade purposes because they used it "'for the purpose of making profit.'" Opp'n 13 (quoting Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 315 (S.D.N.Y. 2010)). But the statute applies only in cases where the defendant uses the plaintiff's identity in a manner that "conveys or reasonably suggests the subject's endorsement of the publication in question." Dworkin, 867 F.2d at 1198 (emphasis added); accord Delan, 458 N.Y.S.2d at 615 ("[D]efendants must have misappropriated plaintiff's property interest in his name or face, leading the public to believe that the plaintiff supports the use of his personality, name or face.") (emphasis added).

Defendants here did not use plaintiff's name for such a purpose; plaintiff has alleged no facts

that would support an inference that defendants' use of her name gave the impression that she was endorsing or promoting defendants' business. The fact that they merely profited from misuse of plaintiff's name does not amount to a violation of the statute. See Cardy v. Maxwell, 169 N.Y.S.2d 547, 550-51 (Sup. Ct. 1957) ("Sections 50 and 51 of the Civil Rights Law were . . . designed to prevent commercial exploitation of a person's name, portrait or picture. Had the legislature intended to prohibit unauthorized use of a person's name or picture for the purposes of all gain, it could easily have so provided.").

Plaintiff's claim for relief under New York Civil Rights Law §§ 50-51 attempts to stretch the statutory protection well beyond its purpose. Accordingly, defendants' motion to dismiss plaintiff's right to publicity claim is granted.

> d.  Conversion

Plaintiff's next cause of action alleges common law conversion. See Am. Compl. ¶¶ 105-09. To state a claim for conversion under New York law, plaintiff must allege: (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner made a demand for return of the property, and (4) the demand for the return was refused. Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc., No. 11 CV 1491(VB), 2012 WL 246673, at *8 (S.D.N.Y. Jan. 6, 2012).

Defendants argue that plaintiff cannot maintain a cause of action for conversion of her name because conversion of intangible property is not actionable in New York. Mot. to Dismiss 10 (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008)). Plaintiff counters, correctly, that the New York Court of Appeals recognized a tort of conversion of intangible property in Thyroff v. Nationwide Mut. Ins. Co., 864 N.E.2d 1272 (N.Y. 2007). In that case, the

Second Circuit certified to the New York high court the question whether the common law tort of conversion applied to electronic computer records and data.  Id. at 1272.  The personal property at issue was customer information and personal information about plaintiff stored on defendant's computers.  Id. at 1273.  The Court of Appeals saw no reason "in law or logic" why the electronic files should be treated any differently than "a paper document kept in a file cabinet."  Id. at 1278.  Accordingly, the court held, plaintiff could maintain a cause of action for conversion of his intangible property.  Id.

Plaintiff describes the property that was the subject of the conversion as her "identity, identifying information, and electronic accounts with insurers."  Am. Compl. ¶ 105.  Even under Thyroff, however, no cause of action may be maintained for conversion of plaintiff's identity and identifying information because defendants could not have "exercised an unauthorized dominion over the thing[s] in question . . . to the exclusion of plaintiff's rights."  Eight in One Pet Prods. v. Janco Press, Inc., 828 N.Y.S.2d 899, 899 (App. Div. 2007); accord Geo Grp., Inc. v. Cmty. First Servs., Inc., No. 11-cv-1711(CBA), 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012) ("The Court does not read Thyroff to alter the traditional rule requiring the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.") (internal quotation marks omitted).  With respect to her electronic accounts with insurers, plaintiff alleges that shortly after she learned of the fraudulent scheme, defendants changed the passwords on her accounts, thus exercising dominion over them and excluding her from use. Am. Compl. ¶ 32.

The problem with this claim is that other than the single conclusory and ambiguous allegation that the accounts "belong[ed]" to plaintiff, id. ¶ 25, all of the factual allegations in the

amended complaint regarding the electronic accounts compel the contrary conclusion -- that plaintiff did not own the electronic accounts.  For example, plaintiff alleges that, although the accounts were in plaintiff's name, they were used exclusively by defendants and the insurance companies to process claims for reimbursement.  See id. ¶ 24.  Plaintiff also alleges that when plaintiff wanted to access the accounts, she had to provide the insurance companies with her name, date of birth, and a unique identification number.  Id. ¶ 25.  "Once [plaintiff] established her identity, the insurers provided [plaintiff] with the login and password for her accounts."  Id. These factual allegations make clear that the accounts were controlled by the insurance companies and used by defendants.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The court "must take all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (internal quotation marks omitted).  Plaintiff's conclusory allegation that the electronic accounts "belong[ed]" to her, Am. Compl. ¶ 25, is precisely the type of "threadbare recital[]" of an element of the cause of action, "supported by [a] mere conclusory statement[]," that Twombly and Iqbal instruct is insufficient.  See Iqbal, 556 U.S. at 678.  Plaintiff has alleged no facts that would plausibly permit the court to infer that she retained the "right to exclude others" from the electronic accounts, such that they were her property.  Cf. People v. Cacioppo, 479 N.Y.S.2d 264, 266 (App. Div. 1984) ("'One of the main rights attaching to property is the right to exclude others . . . .'") (quoting Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978)).  To the contrary, the factual allegations in the amended complaint all lead inexorably to the conclusion that both

defendants and the insurers had superior possessory rights to the accounts over plaintiff. The amended complaint therefore fails to allege facts that would plausibly support an essential element of a conversion claim; namely, ownership by plaintiff of the electronic accounts. See Cochran v. Five Points Temporaries, LLC, 907 F. Supp. 2d 1260, 1273 (N.D. Ala. 2012) (claim dismissed where conclusory statement was undercut by "factual allegations lead[ing] to the opposite conclusion"); Kuhn v. Cnty. of Butler, Civil Action No. 11-661, 2012 WL 726463, at *3 (W.D. Pa. Mar. 6, 2012) ("Beyond his bald and conclusory statement that Defendants engaged in a conspiracy to violate his rights, Plaintiff pleads no facts–with particularity or otherwise–that, if true, would plausibly lead to the conclusion that such a conspiracy actually existed. To the contrary, the factual allegations that he does plead . . . would lead to the opposite conclusion."); Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 409-10 (M.D.N.C. 2011) (dismissing claim where factual allegations were "inconsistent with and in fact belie [plaintiff's] conclusory assertion" of element of cause of action).

For these reasons, defendants' motion to dismiss plaintiff's conversion claim is granted.

e.      Breach of Bailment

Plaintiff's next cause of action, for breach of bailment, suffers from infirmities similar to those of her conversion claim. "One of the essential elements of a bailment is that the property be taken into the possession of the bailee." Osborn v. Cline, 189 N.E. 483, 484 (N.Y. 1934). Plaintiff alleges that defendants used her name or identity improperly; she does not allege that defendants took possession of her name or identity, and it would make little sense to do so. Further, for the same reasons discussed above, plaintiff cannot make out a breach of bailment

claim with respect to the electronic accounts because plaintiff fails to allege that she owned the accounts to begin with. The court therefore grants defendants' motion to dismiss this claim.

      f.      <u>Breach of Contract</u>

Plaintiff next alleges that defendants breached the terms of their employment contract with her by reducing her compensation and using her name to perpetrate fraud. Am. Compl. ¶¶ 127-31. "Under New York state law, to plead a cause of action for breach of contract, a plaintiff must allege: (1) formation of a contract between the parties; (2) performance by plaintiff; (3) defendants' failure to perform; and (4) resulting damage." <u>Castorino v. Citibank N.A.</u>, No. 07 Civ. 10606 (PAC), 2008 WL 5114482, at *2 (S.D.N.Y. Dec. 5, 2008) (internal quotation marks omitted). "Although a plaintiff need not attach a copy of the contract to the complaint or plead the contract's terms verbatim, the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated . . . ." <u>Id.</u> (internal citation and quotation marks omitted). Plaintiff does not provide the contract, nor does she provide any specifics about its formation, such as whether it was written or oral. Nevertheless, "[c]ourts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-<u>Twombly</u> and <u>Iqbal</u>." <u>Comfort Inn Oceanside v. Hertz Corp.</u>, No. 11-CV-1534(JG)(JMA), 2011 WL 5238658, at *6-7 (E.D.N.Y. Nov. 1, 2011) ("While the amended complaint is devoid of specifics, . . . specifics are not required in pleading a breach of contract action."). In addition, if a complaint pleads sufficient facts to state the elements of a breach of contract claim, it will not be dismissed solely because it does not specify whether the contract is oral or written. <u>See Oberstein v. SunPower Corp.</u>, No. 07-CV-1155 (JFB)(WDW), 2010 WL 1705868, at *7 (E.D.N.Y. Apr. 28, 2010); <u>see also Tweendeck V K/S v. U.S. Int'l Imps., Inc.</u>, No. 91 Civ. 4704

(JFK), 1992 WL 42218, at *1 (S.D.N.Y. Feb. 25, 1992) ("That the complaint does not specify whether the contract was oral or written is not fatal to the claim . . . .").

Here, plaintiff alleges that the parties formed an employment contract, under which plaintiff agreed to provide occupational therapy services to defendants' clients and to provide defendants "with information regarding [plaintiff's] licensing and insurance certifications." Am. Compl. ¶ 128. In exchange, plaintiff alleges, defendants promised "to pay [plaintiff] certain agreed-upon compensation and . . . to only use [plaintiff's] name and licensing and insurance information for lawful valid purposes." Id. Plaintiff alleges that defendants breached the contract "by failing to pay . . . the agreed-upon compensation, including but not limited to [plaintiff's] salary and a guaranteed annual $5,000 payment, and using [plaintiff's] name and licensing and insurance information for unlawful, fraudulent purposes." Id. ¶ 130.

Although plaintiff does not identify what provision in the employment contract set the amount of compensation, what the agreed-upon amount was, or what provisions specifically governed defendants' use of her name and information, she does state with specificity that defendants breached the contract by (1) reducing her yearly pay from $140,000 to $106,000, id. ¶ 37, (2) failing to pay her "a guaranteed annual $5,000 payment," id. ¶ 130, and (3) misusing her name and information in the manner alleged throughout the complaint. Plaintiff also alleges that she performed her part of the employment contract by providing occupational therapy services for defendants. Id. ¶ 19. These facts, although somewhat nebulous in identifying the specific provisions of the contract at issue, sufficiently state a claim for breach of contract based on defendants' actions. See Ramirez v. IBM Corp., 829 F. Supp. 2d 555, 558, 562 (E.D. Mich 2011) (plaintiff's allegations that (1) he had an employment contract with defendant that, in

exchange for services, defendant would pay him a certain amount in compensation, and (2) defendant breached the contract by failing to pay plaintiff proper compensation, were sufficient to state a claim for breach of contract).

Accordingly, defendants' motion to dismiss plaintiff's claim for breach of contract is denied.

g.    Declaratory Judgment

Finally, defendants move to dismiss plaintiff's cause of action for a declaratory judgment because, they argue, declaratory judgment is a type of relief, not a cause of action. Mot. to Dismiss 11. In accordance with plaintiff's statement that she is entitled to a declaratory judgement "[i]rrespective of how [the] request is styled," Opp'n 19, the court will simply construe plaintiff's cause of action for a declaratory judgment as a request for such relief.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is denied with respect to plaintiff's defamation claim and breach of contract claim, and granted with respect to all other claims.

SO ORDERED.

 /s/
Allyne R. Ross
United States District Judge

Dated: September 20, 2013
       Brooklyn, New York